My name is Glenn Herra. I represent Career Counseling, Inc. The District Court abused its discretion in denying class certification in this case because its ruling was based on several erroneous legal conclusions. The chief erroneous legal conclusion, and the one I think we should address first, is the proposition that the District Court was required to follow the interpretation of the Consumer and Governmental Affairs Bureau of the FCC in the Amerifactors Bureau ruling. This conclusion was the core of the District Court's denial of class certification. Everything follows from it, and it's fairly flawed. You say that, and I'll come back to this, but my concern is, let's assume you're right. My next question would be, did the District Court get it wrong? Because the statute on its face can be addressed to define a telephone facsimile machine and distinguishes that from a computer. And so it seems to me, if we went to the statute directly without going through the FCC opinion, the question is, could we get to the same place, or would we get to the same place? I'm not trying to discourage you from arguing the role of the agency opinion, which I think is a very complex question. But I'm wondering whether we as a court, just as a matter of law, wouldn't just look at the statute first before we get into any of that and decide whether we need that opinion or whether it persuades us on it. Because our role is to interpret the scope of the class in this case with respect to the requirements of the actual act. But go ahead. I'll be asking you about that later. You can devote your attention to that opinion, too. Judge Niemeyer, I agree with that proposal completely. There's one Circuit Court of Appeals that has addressed that very question that you just raised, Your Honor. It's the Sixth Circuit Court of Appeals in Lindgas v. Curidon AG. We discussed it extensively in our briefs because it approached the question in exactly the same way. It said, first, we're going to look at the plain language of the statute. It looked at the definition of telephone facsimile machine in Section 227bA3, and it said, this is a very broad definition. It is not limited to traditional standalone fax machines. Congress deliberately wrote it to be broader than that, to cover any equipment that has the capacity to receive text or images over a regular telephone line and the capacity to print onto paper. And that covers much more than just a traditional standalone fax machine. Except in the actual prohibition in the statute, it makes a distinction between a computer and a fax machine. And you have to remember, this statute was written in 1999, and everybody knew what a fax machine, it's plugged into the telephone, independent telephone, and receives an electronic signal and prints it out on paper. And now we have all kinds of consolidations. We have printers that function as copiers, fax machines, printers, all three in one. And we have computers that are hooked up and connected to them and all Wi-Fi or plugged in. But the statute, when it makes the prohibition, it says that you can't use a fax machine, a computer, or other device to send a telephone fax machine and unsolicited advertisement. So it makes a distinction between a telephone fax machine and a computer and other devices. And the question is, what did Congress have in mind in 1999 when it distinguished between a fax machine and a computer? I understand, Your Honor. Yeah, but go ahead with your argument. I didn't want to derail you. I wanted to point out that it seemed to me whatever use you think is appropriate of that FCC opinion, it doesn't mean that all our analysis has to be channeled through that or not. And if it's not channeled through that, that automatically determines the appeal. What we would then conclude, if you're right, is that the district court got it wrong in giving so much reliance on the opinion. But we would still be able to look at the statute. Absolutely. And I'm going to move on to the Hobbs Act issue, but I will point out the Sixth Circuit addressed that distinction. I understand. We're all looking at the same statute. Right. And it does not say that a computer can't have the relevant capacity. Well, Congress made a distinction between the computer and a fax machine in its language. And I don't know if you remember back in 1999. That's before iPhones. But I do remember fax machines. And everybody plugged them in their telephones, and sometimes you had a second line, whatever. And that's the only thing Congress could have had in mind back then. Your Honor, even back then, there were other devices that were used to receive faxes other than a traditional standalone fax machine. There were fax modem boards that were addressed in the FCC's 1995 final order. That's a commission order from 1995. From 1995, the 2003 commission order explicitly considered computerized fax servers. We're talking about the statute. We're talking about congressional intent. I understand. And the FCC is talking about the statute because it reasoned that Congress couldn't have meant to allow easy circumvention of the statute simply because technologies evolve over time. Congress deliberately drafted the definition of telephone fax. Similarly, a machine to be broad, to focus on the capacity of the equipment, not on what the thing looks like. Reading it broad, as you would suggest, would make every single advertisement that comes over your computer be a violation of this act. Because it's capable of being printed on paper. And I, well, exactly, I can look to how you want to define it. A computer connected to a printer is a fax machine under your argument. No, I disagree with that. Because it doesn't have the capacity to receive text or images over a regular telephone line. Sure, you could. Can't computers still be plugged into telephone lines? Sure. And if they're being used in that way, yes. No, they don't have to be used in that way. That could be the source of their data. It's pretty slow. And I don't know if many computers do rely on that today. But computers have relied on telephone lines for their data. Sure, and if you're using it to receive faxes, I agree that that is a cover. Not faxes, anything online. In other words, you have emails, you have whatever comes in online on your computer would be violating the act. And clearly, that isn't where, I mean, today, I get 100 advertisements a day on my computer, and you just don't pay attention to it. But under your argument, reading it broadly, as you would want us to do, that would be a fax machine because it's capable of being reduced to paper. But I think that's clearly not what, when you read the act, and the court makes a distinction between computers and telephone fax machines. They meant something back then, and nobody's, I mean, you're not addressing that in your opinion. But why don't you stick with your argument, the order of your argument? I didn't mean to derail you. Very well, Your Honor. Well, the notion that a district court is required to follow an interpretation issued by the Consumer and Governmental Affairs Bureau, the FCC. That's a deeply troubling proposition, and this court should not allow that to stand. If it does anything else in this case, it should address that and make clear that that was not the case. Can we give it Skidmore deference? If you find it is an interpretive rule under PDR Network 3, the 2020 opinion in the PDR Network line of cases, then the proper thing to do would be to remand to the district court. I'm not asking you the relief. I'm asking you, could we rely on the opinion as influential or whatever under Skidmore deference if it were an interpretive opinion? If it's an interpretive rule, then Skidmore deference is the appropriate standard. That's what PDR Network 3 held. But importantly, the court didn't decide whether the rule at issue in PDR Network was subject to Skidmore deference. It remanded to the district court to decide that in the first place. Well, that's one way to go. I mean, it held that we adhere to the principle that the district court should have the first opportunity to perform the applicable analysis, citing Fusaro v. Kogan, a 2019 decision for this case. So it didn't imply that it was discretionary. It just held that that's the appropriate course of action. But I want to take one step back just to illustrate why that central proposition that the court's required to follow this thing can't be right. The manufacturers bureau ruling was issued by a man named Patrick Weber. He was the chief of the consumer, the bureau, I'm just going to call it, in December 2019. I'm sure he's a nice man. I don't know him. I have nothing against him, but he's just an employee of the FCC. He is not elected by the people. He is not even appointed by the president with the advice and consent of the Senate, like the FCC commissioners. At least there, there's some kind of democratic accountability. Mr. Weber is just an employee of the FCC. There's no way under our constitutional system that Mr. Weber has the authority to tell an Article 3 district judge how to interpret a federal statute. That can't be right. Well, that's very persuasive. It seems to me if we were compelled to follow agency opinion, it would deny us of our Article 3 authority and responsibilities. And, you know, the PDR network line of cases where I was counsel for the plaintiff there, I don't want to seem like I'm trying to hide that or anything. But that involved a final order of the FCC. It was indisputably a final order of the full commission. Even a final order of the FCC may not be binding on an Article 3 court. Correct. Absolutely. And Justice Kavanaugh and three other justices agree with you and probably more. But, you know, in the PDR network 2 case, four justices filed a concurring opinion agreeing with you completely saying a district court is never required to follow the FCC's interpretation. You can decide what level of deference to give. Is it Chevron? Is it Skidmore? This court decided on remand that Skidmore deference is the level for interpretive rules. Suppose we just feel that the opinion without any kind of deference, suppose we just feel that the opinion is correct. Well, correct in the interpretation of the statute. I mean, that's what Judge Niemeyer was asking me about. Yeah, I mean, the point that it's hard to get over, as Judge Niemeyer pointed out, this was a statute that was written in 1999, and it has a certain antiquated aspect to it. But the argument can be made that it's up to Congress to bring it up to date. And the difficulty that I have is that there does seem to be a distinction in the act, as Judge Niemeyer has pointed out, between a computer and a fax. And there also seems to me to be a difference between the rather broad definition of who is a sender and the rather narrow definition of who is a recipient. And in light of that difference, can it really be said that every piece of spam or whatever that's sent to a computer is a violation of the act? Given the stark difference in the definition between the sender and the recipient, and there really is, those definitions are written in very different ways. Your Honor, my time has expired. May I answer? Why don't you bring it up in rebuttal? But I'm just telling you what's bothering me. Yes, Your Honor. Laurie Mazzachetti for Apelli Defendant, AmeriFactors Financial Group, LLC. May it please the Court? I think Your Honors are exactly correct that looking at the plain language of the statute, which is what the FCC did in the AmeriFactors. Well, I was asking questions, really, of being indicated, and I'm willing to hear arguments both ways on that. Understood, Your Honor. And Judge Wilkinson just pointed out that the breadth of the sending devices is distinct from the breadth of the recipient devices. Sending devices can be a fax machine, a computer, or other device, whereas the receiving device can only be a fax machine. And so, Congress clearly made a distinction there that doesn't seem to be that difficult to understand in the context of at least 1999, which goes to the heartland of me. I know all the new people know that everything's integrated and superfine. I don't know whether voiceover on a computer is a telephone. And as you know, we have telephone regulations. We have whole statutes addressing telephones. And we have Zoom. If it goes over a telephone line or it goes over a cable, is a cable the same as a telephone line? And so it's getting very complex, and Congress is going to have to update these things as the technology progresses. But we're confronted with a 1999 statute where Congress was addressing the harm of people sending faxes, sending data to fax machines, which automatically printed them out. Now, the definition doesn't have automatically. It has capability of printing it out. But that's what seems to be the target of the statute. I was just an observation, but I want to hear from your colleague. And I guess to the extent that might help you, you might agree. But let me ask you, do you think the district court was wrong in being so tied to the FCC opinion? No, Your Honor. I think that the district court appropriately applied the Hobbs Act. But I do acknowledge that it is a complicated question. One minor correction, the Telephone Consumer Protection Act. Let me ask you just back there, where is the judicial aspect? I mean, all of a sudden, we would be transferring judicial decision making to the executive. Well, Your Honor. If we were bound by that, I don't understand. That's a pretty aggressive position, isn't it? Well, Your Honor, under the statutory regime, Congress clearly delegated rulemaking and other authorities to the FCC, including to interpret the statute, to promulgate rules, to enact guidance. All those rules and policy have to be consistent with the statute. That is correct, Your Honor. And this one, this ruling is, in fact, consistent with the statute. The analysis that comes back to the court, whether they're acting consistently with the statute. I mean, there are different degrees of deference. I'm in the same generation as Judge Niemeyer, so you could put me in about the same position that he just said. And I think there's a lot of ways to get to affirmance here. One way is, of course, to agree with Judge Childs that the district court appropriately applied the Hobbs Act and found that the court was bound by the ruling. Another way to get there is to look at the plain language of the statute, which, as Your Honor noted, it is capable. But I don't understand is why, you know, why do we need to get into Chevron deference and Skidmore deference, which it seems to me, you know, does may carry some danger of abdication. But why don't, why isn't this argument really very straightforward? And that the definition of the sender and the definition of the recipient are very different. There are terms included in the definition of the sender that simply aren't included in the definition, that are omitted in the definition of the recipient. And that's independent of any deference. It just seems to me that the more straightforward argument is to look at the language of the two critical parties. Every communication is a communication between a sender on the one hand and a recipient on the other. And so the definition of sender and recipient would seem to me to be absolutely crucial. And just saying what what communications violate the statute and where there are differences in those definitional, in those crucial terms, we have to pay some attention as a matter of text to the difference. Isn't isn't isn't it that the straightforward argument? That is very straightforward, Your Honor. And where we get to agency Chevron deference, for example, is if the court were to determine there was some ambiguity of whether Internet fax solutions are covered by that definition. Of course, we can look at the plain reading of the statute and understand that Congress could not possibly have contemplated Internet fax solutions that did not exist when it enacted the statute, which one minor clarification was in 1991, a little bit earlier than the ninety nine. But these types of solutions didn't exist. And this situation reminds me very much of of the situation with Facebook versus the good, where very similarly, the FCC had opined and interpreted the meaning of an automatic telephone dialing system under the TCPA. And in that instance, went for a very broad reading and said all of these things are are captured that Congress couldn't possibly have intended back in 1991. And the Supreme Court in Facebook on April two thousand twenty one decision said, no, we have to look at the statutory text and congressional intent. All right. Let me ask you this. If you if you if we agree with you on the. On the interpretation of the statutory text and say, OK, there's there's this difference between sender and recipient. Does that automatically make a class action less manageable or or administratively? Unfeasible or can those things can the different groups of recipients be untangled in a. And in a fairly easy manner. Well, here are the record evidence that evidence, which was unrebutted, demonstrated that that those two types of recipients couldn't be untangled in an administratively feasible manner. The plaintiffs had sent out four hundred and fifty subpoenas to various telecommunications providers, including Verizon and Charter, for example, and said carriers, tell us which of your subscribers. The recipients were using an online fax service and they responded, we don't know. Four hundred and fifty subpoenas were sent out, only about half of which were even responded to at all. And the respondents that had the most critical mass of recipients told us we don't know. And on that basis, Judge Childs found that there is no way to ascertain through an administratively feasible way. Why wouldn't it be? Why wouldn't it be easily ascertainable as to the way in which the recipients receive the allegedly offending advertisements? Well, that's exactly what the plaintiff tried to do, but failed in doing. And we we presented an expert which said this cannot be done in an administratively feasible way because there are no records that exist that would say back in 2016 when this fax was sent, whether the receiving end was a standalone fax machine or an email. There is no way to to know that. Why couldn't you define the class to include persons who had a freestanding fax machine connected to a telephone line and ask them to opt out or be bound? Now, the problem, I suppose, is when you get a judgment and you don't know who to give it to. That's correct, Your Honor. So I think that's that would be a failsafe class because now we're building into the statute, building into the class definition, the element of the claim. The element of the claim is you need to show that the fax was received by a telephone fax machine. And now that's in doubt if you build it into the class definition itself, which is what the plaintiffs tried to do here. And Judge Child said on this record where it's demonstrated that there's no way to figure out who's in and who's out. This does not satisfy the ascertainability requirement. And to your point, Your Honor, if we were to go to trial, how would we figure out without many trials, which is exactly what Judge Child said would have to occur to figure out who would be in and who would be out. So whether there is some other case and some other record evidence that could show you can untangle those things, which I quite frankly haven't seen in every district court that has applied the AmeriFactors order and looked at the record evidence on class certification has said these things cannot be untangled. And whether that's a failure on ascertainability or predominance, the courts have denied class certification. But on this record, the evidence was unrebutted that that couldn't be done. What's a telephone line? Well, I feel like that's one of those things, you know, I guess we would know when we see it, right? But I think that too is a complicated definition. I mean, here, I think the distinction is receiving something on a computer versus receiving something, you know, on a telephone. But if you receive it on the computer, it would still have to come through a telephone line if we were even to go that way.  Is there a distinction between a telephone line and a cable? I'm sure there are some very technical definition that the FCC could explain. In my own experience, a telephone line is a line that you can plug in with a little click on that and stick it into receptacles. That's designed for telephone. And it would have to come from AT&T or whoever was a telephone provider. But I do know we have telephone regulations that nobody knows where they reach and how they apply. I get my telephone over a computer, voice over a computer from a cable company. Is that a telephone line? I think there is a distinction, Your Honor, because a lot of communications travel over the Internet now. So these types of online fax services are Internet-based. And that is something, again, that did not exist in 1991 when Congress had enacted this statute. It's probably time to write your Congress. That might be right, Your Honor, and that's exactly what the outcome was in this Facebook decision that I referred to, that although in a different component of the TCPA, the Supreme Court said you can't take this new technology and try to hoist it into this 1991 statute that simply didn't contemplate this type of technology. And if you were to accept the definition that plaintiffs are advancing, my iPhone would be a telephone facsimile machine. And I think that we all know that that can't be. Congress couldn't have contemplated that. If you're reading it broadly, I suppose it would be. But if you start talking about any device that is capable of printing, then there's no limit. That is absolutely true, Your Honor. I think it is really important. And this is what the FCC itself found when it issued the Merrifactors Order, that the statute says on the sending end, there are three categories of equipment that are in play, the telephone fax machine, the computer, and some other device that's capable of these things. When it comes to the receiving end, it's one category of device, the telephone facsimile machine. We shouldn't render that distinction superfluous. That distinction has meaning. And we all know that when we receive emails, those are received on our computers. So it was on that basis. What's the difference between a fax and an email, unsolicited email? Well, unsolicited emails are covered by a totally different statutory regime called CAN-SPAM. So it's not that there's no regulation there. I'm not trying to say it needed to be regulation. I'm trying to find out when we're construing a statute and everybody gets emails, advertisements, and you sort of ignore them. But we're capable of printing them. My printers automatically connect to my computer. I just hit a button and it'll print. And the question is, can that be construed as a fax machine? And is that a fax because the advertising was sent from a computer? I don't think there's any definition that Congress could have contemplated. And it's certainly not consistent with the statutory language that an email is receiving a fax on a telephone fax machine. And FCC has been consistent in that position since 2003. When we receive an email, that's something very different. It's something on a computer. Over the years, the FCC has shown some confusion in this whole area, too. When they first start out, they want everything broad. And then they come later and they say, well, broad is too broad because of the integration of devices. Who knows what's going to be in 10 years? We still have these statutes. And in 10 years, where are the technologies? That's why this should be a question for Congress. But I do think in the AmeriFactors order, the FCC explains that prior decision and says, well, wait a second. We were looking at technologies that were still functioning like that traditional fax machine, even if they're attached to a modem. There's a difference. I mean, there's a reason for the different definitions of the sender and the recipient. And that is when you get something over a fax machine, at least at the time that Congress was contemplating the statute, one of the annoying things is that the fax machine is inoperative. While the machine is printing out literally hundreds, sometimes hundreds of pages of descriptive material, and it's rendered useless. And it is extremely frustrating to stand in front of one of those machines and having to wait for all the materials to be sent out. I tap my foot and I twiddle my thumbs and I'm saying, come on, come on, come on. And it seems to me that it was that logjam that probably motivated the difference between the computer and the fax machine to the extent that Congress was even aware of it. But the difference in the definition, it's not nonsensical. It may be outmoded, but it seems to me it was not nonsensical at the time it was enacted. And you make the point that, you know, the question who is going to lead us into the age of modern technology and Congress can hold a lot of legislative hearings on the respective burdens that sending to fax machines and sending to computers through email. I think you can make a pretty good argument that sending to a computer, even if it's only email, and even if you have the option of printing it out or not printing it out, it's still, it's really annoying. But the question is, it seems like an ideal subject for a legislative hearing. I mean, that's where I just, that's why I have some difficulty with the plaintiff's position on this. And the FCC did too, the expert agency that understands how these, the statutory regime and the rules promulgated there under are intended to operate and what they're intended to apply to. How are we supposed to take that opinion, the FCC opinion? Look, the law didn't change. The technology did. I'm talking about what role should it play in our decision-making. May I answer, Your Honor? I see that I'm out of time. Yes, please. The easiest application would be Chevron deference, Your Honor. Chevron deference. That would be the easiest application. If there is accepting plaintiff's argument that e-faxes or internet faxes just might be contemplated by the statutory language, which the court is surely free to say, no, the plain language doesn't contemplate it. But if you were to give any credence to the argument that maybe that was contemplated, then we have an ambiguity. And the ambiguity was resolved through the FCC's AmeriFactors order after a notice, a formal notice and comment period in which the plaintiff participated. The problem is, counsel, that Chevron deference is kind of falling out of favor with the Supreme Court. And what is coming into favor is the plain language and text and the rest and the Chevron deference and the Skidmore deference. But particularly Chevron deference is falling out of favor with the Supreme Court because it's handing over its judges, handing over too much authority to the administrative state. Whether you agree with that or not agree with it, it might just be. I mean, it may not. It may not. It may pose a few problems, whereas a plain language and a textual argument may have more resonance. You see what I'm saying? I see I'm out of time. My final comment is that I think there are a lot of ways to get to an affirmance. And the FCC's decision is consistent with the statutory language. So that would certainly justify this court to agree with what FCC did and said, yes, the plain language. Let me ask you one question. It's a definition one. I'm not familiar with the definition of an e-fax. What is an e-fax? Internet based fax that results in an email, not that automated printout. What's the difference between what I receive on a computer and an e-fax? If I receive a solicitation, somebody to buy something or sell something, is that an e-fax? One of the things that the FCC did in the AmeriFactors order is review the technologies. And I'm sure that there are different names for different types of technologies. But what they reviewed is that the origination of a communication that could be received by a telephone fax machine or could be received on your computer just as an email. Then it's just a straightforward email. Why is it an e-fax? I suppose it could be an e-fax if it's sent from a fax machine to my computer. But if it's sent, most of these things that are generated these days are done by computer. You upload whatever you want and you send it out and you send it to telephone numbers that are connected to fax machines. Or you send it to telephone numbers connected to computers or cell phones, whatever you do. That's right. I heard you use e-fax and I saw it being used and I couldn't understand what an e-fax is. Yeah, I think that there's a lot of different ways to describe these emerging technologies that are far different than... I'm not talking about technology. I'm just talking about the pragmatic matter is when I receive an e-fax and when I receive an email, is there a distinction? No, it's the same. It's an email. You're receiving an email. You're just talking past time. I apologize. You're speaking beyond us if you use those terms. I apologize for that, Your Honor. They're ambiguous. They're ambiguous. Arguably, Your Honor. Well, those terms are ambiguous, but it doesn't make that's different than whether the statute is. The statute doesn't use e-fax, does it? That's correct, and it nor could it because those technologies absolutely did not exist in 1991. They came much later and they certainly didn't come into prevalent use until about 20 years later. Thank you, Your Honors. All right. Thank you very much. Mr. Harve, we're happy to hear you in rebuttal, sir. Thank you, Your Honor. Regarding the terms e-fax, online fax service, they're the same thing, which is what's so bizarre about the AmeriFactors Bureau. Because from the 2003 commission order... Just stick with that for a second. What is an online fax or an e-fax? An online fax service is defined in the Bureau order. It's a long definition, but it entails telephone, vaccine machine, computer or other device that sends to a fax server or other device, text or images. What if I receive it on my computer? Well, it depends on how you're using the computer because a fax is sent... I have a computer at home and every day I get hundreds, I don't know hundreds, I get a whole list of advertisements promoting something. And they send that over there. I can print that advertisement. As a matter of fact, I have printed it when it's a gift or something and I'd look at a picture and I'd print it. Now, is that a fax? If it was sent to your email address, then it is an email. It's sent to an internet address, not to a 10-digit telephone number. Faxes are sent to... Okay, how about if it's sent to my telephone number and I get it as a text? And I can download that text on paper. My telephone, my iPhone is connected to other persons by telephone number. And people send me things and send it through a telephone number. And I receive it. I receive documents and I see pictures. And I download it. I can download it. I mean, I can print it. Is that a fax? No, it's not because text messages are covered by a different section of the statute. I know, but I understand. I'm trying to ask you what the difference is. When I'm understanding, you keep using... She uses it too, e-fax and online fax. I don't know what a fax is except in the historical context. I do understand what the historical fax is. FCC has been dealing with these issues for 25 years. They're all covered in the 2003 Commission Order, paragraphs 199 through 201, and in the 2015 Westfax Bureau Rule. That was specifically... That was a petition filed by... I'm not asking the Commission at this point. But they analyzed the statute. That agency is expert in... And what deference does that give? We give them. Well... In that order, you're just pointing to it, but you're handling it. Yes, the 2003 Commission Order. What deference is that? Devron? If PDR Network 1, this court's first decision in 2018, is still good law, even though it was vacated by the Supreme Court in PDR Network 2 and remanded, then it's binding on the district court because this is a final order of the FCC. It is not a bureau order that's currently on appeal, like the AmeriFactors Bureau ruling. So if that case is still good law, then the 2003 order is binding on district courts, and it means that fax servers that then convert the fax into a PDF or other document... When you say binding, what do you mean? Email it, it's binding. Couldn't a district court conclude that that order doesn't follow the statute? It depends on the Hobbs Act question, actually. This court held in PDR Network 1 that the answer's no. A district court's not allowed to do that because circuit courts of appeal have exclusive jurisdiction to determine the validity of final orders of the Commission. That was the issue that was before the Supreme Court in PDR Network 2. The Supreme Court declined to answer that question and remanded to this court to decide two preliminary questions, which it subsequently did in PDR Network 3. And one of those holdings is that interpretive rules are subject only to Skidmore deference, not to Chevron deference. So if PDR Network 1 is still good law, then the 2003 Commission order is binding in the district court, and the district court has to be reversed because there is no distinction between online fax services. Counselor, putting aside the questions, I think the dialogue between the court and counsel has indicated the difficulties of sometimes deciding what is what. And I'm wondering if a certain deference isn't due to it. It's under an abuse of discretion standard, and if a certain deference isn't due to a district court in deciding whether to certify the class. After all, these class actions present sometimes very difficult and extensive questions of practical administrability, and a district court's got to do that. And if a district court looks at all of the evidence and say, you know, I really think that the individual circumstances here are predominant or they're difficult to untangle or whatever, but on those questions of administrability, isn't a trial court's judgment on certification of a class due a considerable amount of respect? It's an abuse of discretion standard, Your Honor, but a district court abuses its discretion when it relies on erroneous legal conclusions. That's the applicable standard here on review. And the erroneous legal conclusions that we pointed out are, you know, that the AmeriFactors Bureau order is a final order for Hobbs Act purposes. It's clearly not. It's not final. It's on appeal right now, and it's not of the Commission. And second, that even if it is a final order, that it's binding on district courts. We argue that that is wrong. But if the court disagrees and holds that final orders are binding, then it's the 2003 Commission order that's binding here. The third error is that even assuming it's a binding order, that the AmeriFactors Bureau rule can be applied retroactively. The faxes in this case were sent in 2016, three years before the AmeriFactors Bureau ruling was issued. The Sixth Circuit held in the Lingas case that the rule can't be applied retroactively like that. The Sixth Circuit affirmed a class of all fax recipients, regardless of whether they were using online fax services or standalone fax machines or whatever. It was all fax recipients. As, you know, dozens, hundreds of TCPA fax cases have been certified over the years, and the courts have always rejected this distinction. And the FCC always rejected the argument that there was a difference between e-faxes or online fax services or something for fax modems or fax servers. It's broadly construed, the statutory definition of telephone fax assembly machine, to cover all of that equipment because the purpose of the statute is protecting consumers. It's not letting junk fax advertisers off the hook on a technicality. They don't know when they're sending a fax whether it's going to be received by a standalone fax machine or by an online fax service that then forwards it to the end user on a computer. They shouldn't get the benefit of the doubt. Now, there's also the ascertainability issue, which we filed an initial petition for hearing en banc on it to change the standard in this circuit. I'm not going to address that here unless, you know, I have to file a petition for a re-hearing en banc. All right. Thank you very much. Thank you. Ms. Mazzucatti, we notice you've reserved two minutes for rebuttal, but do you have something to rebut rather than introducing a new argument? A few minor points, Your Honor. That Lingus decision, the Sixth Circuit decision that plaintiff relies upon, even as there was no briefing before the Sixth Circuit on the AmeriFactors order or how it should be applied, a subsequent Sixth Circuit panel noted that and questioned what the Lingus court had actually ruled. With respect to retro— How do we take that opinion? What's your position on that? Is that a final order of the commission? Is the AmeriFactors order? It is certainly an effective and not tentative order. What's your position? And it's a final order, Your Honor. I acknowledge there's an application for review that is pending. I will note that— The commission hasn't ruled on it yet, has it? It hasn't, and it may never. What makes it a final order of the commission? The CFR regulations indicate that orders of the Bureau of the Consumer and Governmental Affairs of Bureau are effective upon release. And on that basis, two Northern District of California judges, Judge Gilliam and Judge Bailey in Jeffrey Katz Chiropractic and a case involving McKesson both ruled that it was a final order because it was non-tentative. And that's the same type of analysis that Judge Childs applied here. All right. Sorry, Your Honor. Thank you, Rob. Final point as to retroactive application, the law didn't change. The technology did. And as the FCC has always ruled that an email is not— receiving an email is not receiving a fax on a telephone facsimile machine. As technologies evolved over time, there were all these hybrid things. There were technologies that functioned just like that telephone facsimile machine and printing out. And then they really came fully to an email solution. Faxes aren't traditionally received anymore on something that spits out paper and what Congress intended in 1991. I think our office still has a fax. I'm sorry? I think our office still has a fax. What does that make us? It's okay. Many doctors' offices and folks in the medical sphere continue to use fax machines because it is a very secure way of communicating, a very expensive way of communicating, too, because of the toner and the paper and all the things that Congress was concerned about. But it's pretty limited in use at this point, Your Honor. All right. Thank you very much. We appreciate both of your arguments. And we will adjourn sine die. And we'll take a five-minute break. And then we will have the Court reconvene in conference. That's all. The Court stands adjourned sine die. God save the United States and His Honorable Court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King